IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA,

JOHNNY L. FRANKLIN JR.,

  Petitioner,      No. CIV-S-03-0279 RRB KJM P

 vs.

GAIL LEWIS,

  Respondent.      FINDINGS AND RECOMMENDATIONS

            /

   Petitioner is a state prisoner proceeding pro se with an application for writ of habeas corpus under 28 U.S.C. § 2254. Petitioner was convicted in the Superior Court of San Joaquin County of robbery and, following application of California's "Three Strikes Law," petitioner is serving a sentence of thirty-five-years-to-life imprisonment in the California Department of Corrections. He challenges his conviction on two grounds: improper exclusion of a defense witness and ineffective assistance of counsel.

I. Background

   Petitioner was convicted following a jury trial. After petitioner's sentencing, petitioner appealed his conviction and sentence to the California Court of Appeal. The Court of

/////

/////

1

Appeal's summary of the facts underlying petitioner's conviction is consistent with this court's review of the record:

> On August 8, 2000, Lori Fisher was working as a teller at Pacific State Bank. Shelly Urbanek was the bank's operations officer. A man entered the bank whom Fisher recognized from a visit two weeks before. After a brief conversation with her about whether an ATM card had been left in a machine, the man left.
>
> The man returned in a few minutes, and came to Fisher's teller window. Urbanek came up to Fisher's window when Fisher's telephone rang. After first claiming he wanted to make a deposit, the man told Fisher that it was a robbery. While Fisher spoke on the telephone, Urbanek laid paper money from Fisher's cash drawer in front of the robber. When the man loudly demanded more money and larger bills, Urbanek went to another station and opened the drawer and gave the robber more money, including "bait money" that had previously recorded serial numbers. Meanwhile, Fisher signaled to another employee that a robbery was taking place, and hit several alarms.
>
> When the man left, Fisher saw him walking toward Grouse Run for about 200 yards. Fisher and Urbanek described the robber as wearing a wool hat, a wig and sunglasses. Fisher was anxious and scared. Urbanek was uncomfortable and a little nervous. Neither saw a weapon.
>
> Stockton Police Detective Sandoval was returning from lunch, driving an unmarked car down Grouse Run near the bank. Sandoval noticed a man subsequently identified as defendant trying to duck down and hide in the driver's seat of a parked red Nissan Pulsar. Sandoval saw another man wearing a hat, wig and sunglasses come from the bank's parking lot and get into the passenger side of the Nissan. Sandoval contacted his dispatch center, and was eventually told there had been a bank robbery in the neighborhood. Sandoval pursued the Nissan driven by defendant, as it accelerated through a residential area, until it stopped on Long Barn. Sandoval saw a shirtless man get out of the passenger side of defendant's car, and run between two duplexes on Long Barn, hitting a gate. Sandoval chased the shirtless man on foot, but was unable to find him.
>
> Meanwhile, defendant continued to drive at least 60 miles an hour while being pursued by motorcycle police and a patrol car with lights. Police officers blocked defendant's car in traffic. Officer Willson arrested defendant. When asked to identify himself by another officer, defendant claimed he had lost his memory. In defendant's car were the hat, wig, sunglasses, and a shirt identified by the bank employees.

> Defendant's girlfriend, Angela Moore, lent defendant her red Nissan on the morning of the robbery.
>
> The robber took from $1,200 to $1,400. None of the money was recovered except one $20 bill. [Footnote omitted.] The bank's security camera took pictures of the robbery which were presented at trial.
>
> Defendant testified in his own defense. He denied participating in a robbery or carrying any passengers. He claimed he was simply looking for an apartment to rent when the police stopped him.
>
> Detective Sandoval became convinced that the man who took the money in the bank was one John Christopher Ivy, who lived at 1718 Long Barn. Ivy's description was similar to the man he saw run from the Nissan. Sandoval identified Ivy from a photograph. Detective Sandoval searched 1718 Long Barn, and arrested Ivy several weeks later.
>
> At a pretrial motion, defense counsel sought to introduce evidence that Detective Sandoval had made a positive identification of Ivy. Subsequently, the bank robbery charge was filed against Ivy, but was dismissed when it was proven that Ivy was with his social worker in Reno at the time of the robbery. The court ruled that Detective Sandoval could be questioned about the misidentification. The court refused to allow the defense to call Ivy and his social worker as witnesses, unless Sandoval failed to concede his error. The court found that, under Evidence Code Section 352 [footnote omitted], the additional witnesses would take too much time, and confuse and misdirect the jury.
>
> Sandoval testified that he had been positive that Ivy was the man he saw running from the Nissan. Nonetheless, after he spoke with a social worker in Reno who verified that Ivy had been in her office until 12:30 p.m. on August 8, the case against Ivy was dismissed.
>
> Before trial, defendant moved to strike his 1995 robbery conviction as unconstitutionally obtained, because he had not waived his rights against self-incrimination or to confront and cross-examine witnesses. The court found the defense had failed to establish through declarations or other evidence that defendant had actually been unaware of those constitutional rights in 1995. Defendant's request for reconsideration of the motion to strike was denied.

Answer, Ex. D at 2-5. The Court of Appeal affirmed petitioner's conviction and term of imprisonment. Id., Ex. D at 18. Petitioner sought review of the Court of Appeal's decision in

/////

3

the California Supreme Court. <u>Id</u>., Ex. F. The request for review was denied without comment. <u>Id</u>., Ex. G.

## II. Standards For Granting Habeas Relief

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA). <u>See</u> <u>Ramirez v. Castro</u>, 365 F.3d 755, 773-75 (9th Cir. 2004) (Ninth Circuit affirmed lower court's grant of habeas relief under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his Eighth Amendment rights and that § 2254(d) does not preclude relief); <u>see</u> <u>also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and therefore did not address the merits of petitioner's Eighth Amendment claim).[1] Courts are not required to address the merits of a particular claim, but may simply deny a habeas application on the ground that relief is precluded by 28 U.S.C. § 2254(d). <u>Lockyer</u>, 538 U.S. at 71 (overruling <u>Van Tran v. Lindsey</u>, 212 F.3d 1143, 1154-55 (9th Cir. 2000) in which the Ninth Circuit required district

---

[1] In <u>Bell v. Jarvis</u>, 236 F.3d 149, 162 (4th Cir. 2000), the Fourth Circuit Court of Appeals held in a § 2254 action that "any independent opinions we offer on the merits of constitutional claims will have no determinative effect in the case before us . . . At best, it is constitutional dicta." However, to the extent <u>Bell</u> stands for the proposition that a § 2254 petitioner may obtain relief simply by showing that § 2254(d) does not preclude his claim, this court disagrees. Title 28 U.S.C. § 2254(a) still requires that a habeas petitioner show that he is in custody in violation of the Constitution before he or she may obtain habeas relief. <u>See</u> <u>Lockyer</u>, 538 U.S. at 70-71; <u>Ramirez</u>, 365 F.3d at 773-75.

4

courts to review state court decisions for error before determining whether relief is precluded by § 2254(d)). It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d). See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002). A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S. 919 (2003). Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). In other words, the court assumes the state court applied the correct law, and analyzes whether the decision of the state court was based on an objectively unreasonable application of that law.

It is appropriate to look to lower federal court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law. See <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 598 (9th Cir. 1999).

III. <u>Arguments and Analysis</u>

        A. <u>Refusal To Allow Defense To Call Witness Ivy (Claim 1)</u>

Petitioner claims the trial court violated petitioner's right to present a complete defense and his right to due process under the Sixth and Fourteenth Amendments by failing to allow petitioner to call John Ivy in an attempt to impeach the testimony of Detective Sandoval. Pet. at 5 & Attach. at 2-8. A violation of the Sixth Amendment occurs if the trial court denies a criminal defendant the opportunity to present a meaningful defense. <u>U.S. v. Scheffer</u>, 523 U.S. 303, 308 (1998) (courts have "broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve'"; exclusion of evidence is "unconstitutionally arbitrary or disproportionate only when it has infringed upon a weighty interest of the accused"). A violation of Due Process Clause of the Fourteenth Amendment occurs if a state court evidentiary ruling rendered a trial arbitrary and fundamentally unfair. <u>Jammal v. Van de Kamp</u>, 926 F.2d 918, 920 (9th Cir. 1991).

The California Court of Appeal addressed this claim as follows:

> Defendant argues that the trial court's exercise of discretion limiting the testimony on Sandoval's mistake to Sandoval's own admission of misidentification deprived defendant of his right to impeach Sandoval and "bolster" his own defense. Defendant contends he was denied his Sixth and Fourteenth Amendment rights to present a defense because the trial court refused to allow him to present testimony from Ivy and Ivy's social worker that Ivy was in Reno when Detective Sandoval believed him to be the bank robber. We disagree.
>
> A defendant has a constitutional right to present evidence on his own behalf. (*Davis v. Alaska* (1974) 415 U.S. 308, 317.) The right of a defendant to attack the credibility of the witness against him is so fundamental that it should not be abridged by the consumption of time unless the evidence is cumulative. (*People v. Taylor*

(1980) 112 Cal.App.3d 348, 365.)  However, a defendant's right to present evidence contemplates the presentation of evidence that has significant probative value.  A defendant does not have the right to unfettered presentation of any possible relevant evidence without regard to the mandate of Evidence Code section 352.  (*People v. Reeder* (1978) 82 Cal.App.3d 543, 553.)

We will not overturn a trial court's exercise of discretion on appeal under Evidence Code section 352 unless there is a showing that it was exercised in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.  (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.)  The plain meaning of cumulative as "repetitive' or additional" implies that other evidence on the point at issue has already been introduced.  (E.g., *In re Romeo C.* (1995) 33 Cal.App.4th 1838, 1843; *People v. Evers* (1992) 10 Cal.App.4th 588, 599, fn. 4.)

We conclude there was no abuse of discretion in this case.  The [trial] court found that the evidence of Sandoval's misidentification was relevant, but that additional witnesses raised "the possibility of confusion and misdirection."  The trial court correctly found that Detective Sandoval's apparent misidentification of the robber as Ivy was relevant to his capacity as an eyewitness.  The trial court found that the defense could present the testimony of Ivy and his social worker if Sandoval did not concede he had made an incorrect observation.  When Sandoval admitted his misidentification and his misplaced certainty, the jury was provided with all the relevant evidence.

The court simply limited the number of witnesses who would testify to the same fact–Sandoval's incorrect identification.  The court's finding that multiple witnesses would be confusing and mislead the jury was sound.  The trial court's ruling that the jury would hear about the misidentification from one witness, rather than three, did not deprive defendant of his right to present a defense.  The jury did hear the uncontested information that the detective had made a mistaken identification and that the case against Ivy had been dismissed.

The trial court did not err in excluding the cumulative evidence under Evidence code section 352.

Moreover, no prejudice is shown by the exclusion of additional witnesses.  Sandoval's capacity to observe was only tangentially relevant to defendant's case, particularly after defendant testified to driving the car and admitted seeing Sandoval.  [footnote omitted]  Whether Ivy was the robber or not had little to do with the evidence against defendant as the getaway driver.  Defendant now speculates that Ivy would have assisted defendant's case because Ivy's appearance may be quite different than the robber described by the witnesses.  This is not the offer of proof presented to the

> trial court, and we do not consider it.  (See Evid. Code, § 354.)
> Contrary to defendant's claim on appeal that Sandoval's identification was the "crucial link" in the case, the finding of the disguise in defendant's car, his speeding from the neighborhood, and the testimony of multiple police officers who followed him provide ample links to the robber in the bank who escaped apprehension.

Answer, Ex. D at 5-8.

Petitioner has not met his burden of showing that the Court of Appeal's adjudication of petitioner's claim regarding the possible testimony of John Ivy resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the Court of Appeal.  The cases upon which petitioner relies stand for the proposition that a criminal defendant should not be deprived of the opportunity to present all aspects of his defense.  See Crane v. Kentucky, 476 U.S. 683, 690 (1985); Davis v. Alaska, 415 U.S. 308, 317, 318 (1973); Chambers v. Mississippi, 410 U.S. 284, 302 (1973); Webb v. Texas, 409 U.S. 95, 98 (1972); Washington v. Texas, 388 U.S. 14, 18, 19, 23 (1966).  The Ninth Circuit has developed a five factor test for use in determining whether exclusion of evidence violated habeas petitioner's due process rights; the test evaluates: 1) the probative value of the excluded evidence on the central issue, 2) its reliability, 3) the capability of evaluation by the trier of fact, 4) whether it is sole evidence or merely cumulative, and 5) whether it is a "major part" of the defense case.  Chia v. Cambra, 360 F.3d 997, 1004 (9th Cir. 2004), cert. denied, ___ U.S. ___, 125 S. Ct. 1637 (2005).  In this case, the testimony of Ivy and his social worker was not probative of the central issue in the case; whether petitioner was a participant in the robbery for which he was convicted.  While the testimony may have been reliable and would have been susceptible of evaluation by the jury, it would not have provided new or different information but would have been cumulative of the testimony of Detective Sandoval.  As noted by the Court of Appeal, Sandoval

/////

admitted he had initially misidentified John Ivy as the person he saw running from the Nissan before petitioner sped away in the car. RT 127:27-129:25; 151:1-153:5.

Petitioner also suggests that if Ivy would have been allowed to testify, the jury would have been better able to assess Sandoval's ability to recall physical descriptions of persons. Pet., Attach. at 2-8. However, as suggested by the Court of Appeal, an assessment of Sandoval's general ability to accurately recall the physical description of persons would not have been significantly relevant in determining petitioner's guilt. Defendant himself admitted to being in the Nissan observed by Sandoval near the scene of the robbery and seeing Sandoval when petitioner was parked on Grouse Run. RT 263:17-267:4; 277:11-279:14; 294:6-295:7. Given petitioner's admissions, Ivy's testimony could not reasonably have formed a major part of the defense case.

For these reasons, failing to allow Ivy to testify did not deny petitioner the opportunity to present a meaningful defense, nor deny him of a fair trial. Petitioner's first claim must be rejected.

### B. Ineffective Assistance of Counsel

Petitioner asserts trial counsel rendered ineffective assistance of counsel in violation of the Sixth Amendment and the appellate court's denial of a request for remand on direct appeal violated petitioner's rights under the Fourteenth Amendment. Pet. at 5, Attach. at 9-14. The California Court of Appeal addressed petitioner's ineffective assistance of counsel claim as follows:

> Defendant argues he was denied his Sixth Amendment right to effective assistance of counsel at his motion to strike his 1995 prior robbery conviction, which was based on a "slow plea,"[fn] on two different theories. First, defendant contends his counsel was ineffective for moving to strike the prior conviction using an incorrect legal standard. Specifically, he points to trial counsel's "incorrect" argument that failure to advise a defendant of constitutional rights in a "slow plea" is reversible per se. Because trial counsel did not know that a defendant must show actual ignorance of his rights to demonstrate prejudice under current law in order to strike a prior conviction, and failed to make such a

9

showing, defendant contends he was deprived of effective assistance of trial counsel.

Second, defendant argues trial counsel was hampered by an "actual and/or potential" conflict of interest in moving to strike the 1995 prior conviction, because trial counsel had represented the codefendant in the same "package deal" plea bargain proceeding. We reject both claims.

To establish ineffective assistance of counsel under either the federal or state guarantee, a defendant must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and that counsel's deficient performance was prejudicial, i.e., that a reasonable probability exists that, but for counsel's failings, the result would have been more favorable to the defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688 (*Strickland)*; *People v. Waidla* (2000) 22 Cal.4th 690, 718; cf. *People v. Ledesma* (1987) 43 Cal.3d 171, 215-218.) We examine the record to determine if there is any explanation for the challenged aspects of representation. A challenge to counsel's performance should generally be made in a petition for writ of habeas corpus, not on appeal. (*People v. Lucero* (2000) 23 Cal.4th 692, 728-729.)

In *People v. Allen* (1999) 21 Cal.4th 424, 428-443 (*Allen*), our Supreme Court stated that a reversible per se standard would not apply to a collateral attack on a prior conviction made in a motion to strike a prior conviction based upon the failure to advise a defendant of constitutional rights. A silent record is not sufficient. A defendant must "plead and prove he was actually unaware of his rights, and that he would not have pleaded guilty had he known his rights." (*Id*. at p. 436, fn. 3.) A defendant "must affirmatively allege that at the time of his prior conviction he did not know of, or did not intelligently waive, such rights." (*Id*. at p. 439; italics omitted.) Moreover, an evidentiary hearing must then be held to determine the truth of that allegation. (*Ibid.)*

When the prescient trial court advised the parties of the holding of *Allen*, *supra*, 21 Cal.4th 424, which reiterated that a defendant must demonstrate an actual lack of knowledge of his constitutional rights, defense counsel admitted that he had not read *Allen*.

We hold defendant can establish the first prong of the *Strickland* test because his trial counsel was admittedly unfamiliar with *Allen*, although advised of its holding by the court in his pretrial motion to strike. However, he cannot show prejudice under the second prong of *Strickland*.

Defendant filed a motion to strike the 1995 robbery conviction based upon a "slow plea" because the trial court failed to obtain a personal waiver from defendant of his constitutional rights to self-

incrimination and confrontation and cross-examination. In his moving papers, at the pretrial hearing on the motion, and at his request for reconsideration of the motion, defense counsel insisted that the standard of prejudice for such a failure was reversible per se. Defense counsel did not present any testimony or affidavit alleging that defendant had actually been unaware of those constitutional rights in 1995, and would not have entered into a "slow plea" had he been aware of his rights. Trial counsel repeatedly cited *People v. Wright* (1987) 43 Cal.3d 487, 493, which had held that failure to advise a defendant of his rights to confrontation and silence was reversible per se.

Defendant has not shown any prejudice under *Strickland* because he has failed to establish what an adequately prepared counsel would have done, utilizing the *Allen* standard. Even assuming for the sake of argument that a diligent counsel would have been aware of the proper legal standard, we cannot assume that such a motion could be supported by truthful declarations that defendant was unaware of his constitutional rights. There is no evidence in the appellate record to show that the outcome of the collateral attack on the prior conviction would have been different. Claims based upon facts outside the appellate record are only cognizable on habeas corpus.

Defendant's right under the Sixth and Fourteenth amendments to effective counsel encompasses a right to conflict-free counsel. Defendant argues for the first time on appeal that trial counsel could have been a potential witness at a hearing on a motion to strike his 1995 prior conviction because trial counsel represented his codefendant in a package deal plea.

Included in the right to the effective assistance of counsel is a "'correlative right to representation that is free from conflicts of interest.' [Citations.]" (*People v. Bonin* (1989) 47 Cal.3d 808, 834.) "We have repeatedly recognized that such conflicts 'embrace all situations in which an attorney's loyalty to, or efforts on behalf of, a client are threatened by his [or her] responsibilities to another client or a third person or by his [or her] own interests. [Citation.]'" (*People v. Clark* (1993) 5 Cal.4th 950, 994.)

In *Mickens v. Taylor* (2002) _ U.S. _ [122 S.Ct 1237; 152 L.Ed.2d 291], the United State Supreme Court recently held that an "'actual conflict,' for Sixth Amendment purposes, is a conflict of interest *that adversely affects counsel's performance.*" (*Mickens v. Taylor; supra*, 122 S.Ct. 1237 at p. 1244, fn.5; italics added.) The high court held that a defendant must demonstrate an actual conflict of interest affecting performance of counsel even when a trial court failed to inquire into a potential conflict of interest about which it knew or reasonably should have known.

/////


Under our state Constitution, a "potential" conflict must still be supported by some evidence of ineffective representation. The California Supreme Court explained in *People v. Clark*, *supra*, 5 Cal.4th 950, that, "'[u]nder our state Constitution, "[w]e have applied a somewhat more rigorous standard of review." [Citation.] Regardless of an objection, "even a potential conflict may require reversal if the record supports 'an informed speculation' that appellant's right to effective representation was prejudicially affected." (*People v. Clark*, *supra*, 5 Cal.4th at p. 995.) However, "a showing that the alleged conflict prejudicially affected counsel's representation of the defendant is . . . required."'" (*Ibid.*)

Defendant now relies upon the existence of a package deal as the basis for "informed speculation" that trial counsel would not want to undo the plea bargain of his then-client or that defendant's plea was involuntary is misplaced. (*People v. Clark*, *supra,* 5 Cal.4th 950, 995.) Package deal plea bargains are not per se coercive, and will not be vacated even on direct appeal absent affirmative evidence of prejudice. (*In re Ibarra* (1983) 34 Cal.3d 277, 287-290.) Defendant points to no evidence of involuntariness.

Although defendant now argues trial counsel could be a witness to the circumstances of his prior plea, the nature of trial counsel's testimony is not apparent from the record of the plea in the prior conviction, and is not further described by defendant. Defendant does not present any basis other than the missing waivers of self-incrimination and cross-examination upon which trial counsel could have attacked the prior conviction. The record does not show that trial counsel could testify that defendant did not actually understand his constitutional rights at the 1995 plea. Defendant does not claim trial counsel's past representation of a codefendant was connected to trial counsel's admitted unfamiliarity with current Supreme Court authority concerning collateral attacks on prior convictions.

Therefore, there is neither actual evidence of adverse effect upon trial counsel's performance under the federal standard, nor "informed speculation" of prejudicial impact upon his performance under the state standard due to counsel's former representation. If an actual conflict existed, it must be demonstrated by competent evidence outside the appellate record.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

[Fn] A "slow plea" is generally defined as a submission of the case to the trial court based upon the transcript of the preliminary hearing, as was done in this case, or other documents, with the understanding that the court will find defendant guilty. (*Bunnell v. Superior Court* (1975) 13 Cal.3d 592, 602.)

Answer, Ex. D at 11-17.

Here, as with his first claim, petitioner has not met his burden of showing that the Court of Appeal's adjudication of petitioner's ineffective assistance of counsel claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the record before the Court of Appeal. Rather, the Court of Appeal expressly acknowledged and carefully applied Strickland v. Washington, 466 U.S. 668 (1984), the seminal Supreme Court case concerning Sixth Amendment ineffective assistance of counsel. Nothing in the record suggests petitioner was actually unaware of his right to be free from self-incrimination, his right to confront witnesses and his right to cross-examine witnesses when petitioner pled guilty in 1995. Cf. ACT 10-23. Petitioner has not established that he has in any way been prejudiced by his trial counsel's unfamiliarity with People v. Allen. Petitioner also has failed to show his trial counsel's representation of a codefendant in 1995 in any way affected counsel's representation of petitioner in this case. Petitioner's arguments are wholly speculative without any factual support justifying either a grant of the requested writ or a remand to state court for further proceedings. See Pet., Attach. at 11-12, Traverse at 5-6; cf. Ward v. Whitley, 21 F.3d 1355, 1362 (5th Cir. 1994).

IV. Conclusion

For the foregoing reasons, the court will recommend that petitioner's application for writ of habeas corpus be denied.[2]

/////

---

[2] The court notes that in petitioner's traverse, he references a third claim based on an omitted jury instruction. Traverse at 3-4. It appears petitioner copied, for the most part, the reply brief that was filed on his behalf in the California Court of Appeal and submitted that as his traverse. Traverse; cf. Answer, Ex. C. Petitioner raised three claims in the Court of Appeal. Petitioner raised only the two claims addressed herein in his petition for review before the California Supreme Court, Answer, Ex. F, and in his application for writ of habeas corpus in this court. It is likely that petitioner included the third claim in his traverse inadvertently. In any case it is not appropriate to raise new arguments in a traverse. Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994). Accordingly, the argument referenced on pages 3 to 4 of petitioner's traverse is disregarded.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 24, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

---

1
fran0279.157